**FENNEMORE CRAIG, P.C.**
Leslie Bryan Hart (No. 4932)
7800 Rancharrah Parkway
Reno, Nevada 89511
Telephone: (775) 788-2200
Email: lhart@fennemorelaw.com

Anthony W. Austin (No. 10850)
2394 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
Telephone: (602) 916-5000
Email: aaustin@fennemorelaw.com

*Attorneys for Alliance Trust Company*

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>GREGORY E. CRAWFORD and TORREY CRAWFORD,<br><br>Debtor(s). | No. BK-25-50104-hlb<br><br>Chapter: 7 |
| ALLIANCE TRUST COMPANY LLC, a Nevada limited liability company,<br><br>Plaintiff(s),<br><br>v.<br><br>GREGORY E. CRAWFORD and TORREY CRAWFORD, husband and wife, Nevada residents,<br><br>Defendant(s). | Adversary Proceedings: 25-05017-hlb<br><br>**AMENDED ALLIANCE TRUST COMPANY'S RESPONSE TO TORREY CRAWFORD'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

Plaintiff, Alliance Trust Company, LLC ("Alliance"), by and through its counsel of record, Fennemore Craig, P.C., provides its Response to Torrey Crawford's *Motion for Judgment on the Pleadings*, filed January 20, 2026. This Response is based upon the following memorandum of points and authorities, the pleadings and papers on file in this case, and any oral argument the Court may hear.

63273659.2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND FACTUAL BACKGROUND

Torrey Crawford moves for judgment on the pleadings, seeking judgement be entered and her discharge entered pursuant to 11 U.S.C. §727 as she believes Alliance's claims for nondischargeability should be pursued against her husband, Greg Crawford, only, as he is the sole tortfeasor. As set forth in Alliance's Adversary Complaint, Mrs. Crawford was named in this action to preserve her right to Due Process where Alliance is seeking to exempt its claims from Mr. Crawford's discharge and the community discharge of 11 U.S.C. § 524(a)(3).

The factual background of this case is critical for the Court's understanding of why Mrs. Crawford was a named defendant in this case and why Alliance feels the need to be incredibly cautious in these proceedings to ensure the Crawfords cannot avoid judgment in the event Alliance's case is successful.

Mr. Crawford was a member and manager of Alliance from January 2011 until May 28, 2021, when he resigned as co-manager, president, and director of Alliance. ECF 22 Ex. 4, at 10:24-26, 20:25-26. Throughout his tenure at Alliance, it became clear to Lou Robinson, among others, that that Mr. Crawford had used company funds and the company's trade secrets and other confidential information to his own advantage. *Id.* at 16:13-20:25. The Arbitrator, retired Nevada Supreme Court Justice Nancy Becker, found as a matter of law that Mr. Crawford: (1) willfully misappropriated trade secrets, (2) breached his contract with Alliance, (3) breached his fiduciary duty to Alliance, (4) intentionally interfered with its prospective economic advantage, and (5) breached the implied covenant of good faith and fair dealing. *Id.* at 52:10-114:23.[1] Justice Becker also repeatedly found that Mr. Crawford "had little credibility," "was not credible," "generally speaking, Crawford's testimony as a whole was not credible," he "lack[ed] …credibility," and that he "consistently sought to bend the truth." *See e.g.,* Arbitrator's Award at pp. 21, 22, 55, 70, 82, 89, 90, 94, 98 and 101.[2]

---

[1] This Opposition incorporates the factual findings made by the Arbitrator and factual allegations made in the Complaint.
[2] The Award has been previously submitted to the Court by hand delivery, and the contents do not appear on the publicly accessible docket.

63273659.2

After extensive briefing and oral argument, the Arbitration Award was confirmed by the Hon. Lynne Jones of the Second Judicial District Court in and for the County of Washoe, State of Nevada. Judgment was entered against Mr. Crawford thereafter (the "District Court Judgment"). In the District Court Judgment, Alliance was awarded over eight million dollars in damages. ECF 1 at ¶ 7. This judgment included compensatory damages in the amount of $1,636,000.74 and punitive damages of $3,254,168.00 awarded to Alliance. *Id.* Two additional judgments were entered against Mr. Crawford and in favor of Lou Robinson and Denis Damiens, although those judgments are not the subject of this action. To date, no amount has been paid on these judgments.

Nearly two months after the District Court Judgment was entered against Mr. Crawford, and facing imminent execution-related efforts, he and his wife filed a joint voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. Case No. 25-50104-hlb, ECF 1. Thereafter, on May 12, 2025, Alliance initiated this action for the Court to determine that the debts owed to Alliance by both Mr. and Mrs. Crawford are non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and (6). ECF 1.

**II.    LEGAL STANDARD**

A motion for judgment on the pleadings in an adversary proceeding is governed by Federal Rules of Civil Procedure 12(c). Fed. R. Bankr. P. 7012(b) (incorporating Federal Rules of Civil Procedure 12(b)-(i)). The Ninth Circuit has held that, following *Iqbal*, Rule 12(c) is "functionally identical" to Rule 12(b)(6). *Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). "The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin*, 867 F.2d at 1192.

A complaint states a claim sufficient to survive Rule 12(b)(6) dismissal if it includes "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences that can be drawn from them. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 12(b)(6) does not allow dismissals based on a judge's skepticism of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); *see also In re Tracht Gut, LLC*, 836 F.3d 1146, 1151 (9th Cir. 2016).

### III. LEGAL ARGUMENT

Mrs. Crawford is not protected from liability as an innocent actor. Alliance has not brought tort claims against Mrs. Crawford, nor does it purport to do so. Rather, Mrs. Crawford is named in the Complaint "to bind marital property and give notice as required under the Bankruptcy Rules of Procedure." ECF 1 n.1. Mrs. Crawford is additionally named to provide her notice of the adversary proceedings as a filing spouse. *See Willard v. Lockhart-Johnson (In re Lockhart-Johnson*, 631 B.R. 38, 45 (9th Cir. BAP 2021) ("[A] nondebtor spouse will typically be a required party to a hypothetical nondischargeability complaint but note that '[t]here is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a).... The determination is heavily influenced by the facts and circumstances of each case.'") (quoting *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1081 (9th Cir. 2010)).

The basis for including Mrs. Crawford in the adversary action is well-supported in case law. In *Bartenwerfer v. Buckley*, the United States Supreme Court unequivocally ruled that § 523(a)(2)(A) bars discharge of debts incurred by fraud even if the debtor did not personally commit the fraud. 598 U.S. 69 (2023). The *Bartenwerfer* Court found that "[t]he debt must result from someone's fraud, but Congress was "agnosti[c]" about who committed it." *Id.* at 76 (quoting *Watson v. United States*, 552 U.S. 74, 81 (2007) (alternation in original).

It is true that, generally, "[w]hen a creditor asserts a claim against a debtor for nondischargeability under § 523, it is not ***necessary*** to name the ***non-filing*** 'innocent spouse' or seek separate relief from the community property discharge because, pursuant to § 524(a)(3), a

community claim excepted from discharge under § 523 is automatically excepted from the community property discharge." *In re Lockhart-Johnson*, 631 B.R. at 45 (citing *Case v. Maready (In re Maready)*, 122 B.R. 378, 381-82 (9th Cir. BAP 1991)) (emphasis added). However, the *Lockhart-Johnson* court continues that "if a creditor asserts hypothetical nondischargeability or a hypothetical discharge objection based on conduct by the nondebtor spouse, the creditor **must take action** in the debtor's case." *Id.* at 46 (emphasis added).

Unlike in *Lockhart-Johnson*, here the debtor spouse is the one against whom the wrongful conduct is alleged. Case No. 25-50104-hlb, ECF 1. A wrongdoer like Mr. Crawford cannot "hid[e] behind [his] innocent spouse's discharge," and Mrs. Crawford, based on Nevada's community property rules, must "bear some burden of responsibility" for Mr. Crawford's actions. *Rooz v. Kimmel (In re Kimmel)*, 378 B.R. 630, 637 (9th Cir. BAP 2007).

Further, because Alliance's claims constitute a "community claim" Mr. and Mrs. Crawford's community discharge is implicated by these proceedings. The Bankruptcy Code defines a "community claim" as a prepetition claim "for which property of the kind specified in section 541(a)(2) … is liable." 11 U.S.C. § 101(7). Section 541(a)(2), in turn, brings into the estate the Debtors' interests in community property (and certain community property under the Debtors' management and control).

Nevada follows an expansive approach to community property liability for one spouse's tort debts. Under Nevada law, either spouse may "manage and control" community property with broad powers of disposition, subject to limited exceptions. NRS 123.230. Nevada law also expressly protects a spouse's share of community property only from premarital debts of the other spouse, confirming (by negative implication) that debts incurred during marriage are generally enforceable against community property. NRS 123.050. In *Randono v. Turk*, the Nevada Supreme Court held that community property is subject to one spouse's debts "whether arising out of tort or contract, during his lifetime." 86 Nev. 123 (1970). The court reasoned that if community property can be given away by the husband and is subject to his debts upon death under NRS 123.260, "we see no reason why it is not subject to his debts, whether arising out of tort or contract, during his lifetime." *Id*. This holding establishes that tort liability creates community debts under

1  Nevada law. The statutory framework supports this interpretation through NRS 123.220, which establishes the community property presumption for all property acquired after marriage, and Nevada courts apply general principles that debts incurred by either spouse during marriage are the responsibility of the community.

Accordingly, Alliance's claim (arising from conduct occurring during the marriage and giving rise to the Arbitration Award and Judgment) constitutes a community claim within Section 101(7), meaning community property is liable for the debt even if Mrs. Crawford is not otherwise personally liable on the Judgment. Section 524(a)(3), the "community discharge," protects after-acquired community property in community-property states like Nevada, but that protection does not apply to a community claim to the extent it is excepted from discharge under Section 523. Courts in the Ninth Circuit apply this principle to hold that when the debt is nondischargeable as to the wrongdoing spouse, the creditor may enforce the nondischargeable debt against: (i) the wrongdoing spouse's separate property, (ii) community property in the bankruptcy estate under Section 541(a)(2), and (iii) postpetition community property under Section 524(a)(3) even though the so-called "innocent spouse" is not otherwise personally liable for the debt. *Arcadia Farms Ltd. v. Rollinson (In re Rollinson)*, 322 B.R. 879 (Bankr. D. Ariz. 2005).

In addition, it cannot be seriously argued that Mr. Crawford's frauds did not benefit the community. Even if Mrs. Crawford did not directly participate in the full scope of the fraud perpetuated by Mr. Crawford, Mrs. Crawford benefitted from the fruits of his deceit. As admitted in her Motion, Mrs. Crawford has been married to Mr. Crawford for more than 20 years. ECF 22 at ¶ 1. Throughout their marriage, Mrs. Crawford worked intermittently as a gate agent for JetBlue or in retail sales at Pottery Barn and J. Crew. *Id.* It is sufficient to assume that Mr. and Mrs. Crawford lived primarily on Mr. Crawford's substantial income as a member and manager of Alliance. *See* Case No. 25-50104-hlb, ECF 1, at p.6 (estimating, under oath, the Crawfords' joint net worth to be between $1 million and $10 million). Thus, the community, and Mrs. Crawford, must be bound by the nondischargeability of her husband's debt due to his malfeasance.

Not only did Mrs. Crawford benefit from Mr. Crawford's misconduct to the extent his income was the primary financial support for the family, but she also participated in and benefited

from his misconduct in other ways. The Arbitrator found that Mrs. Crawford utilized Alliance's funds for the benefit of herself and her family and friends.   ECF 22 Ex. 4, at 36:9-14. The Arbitrator made explicit findings that Mrs. Crawford utilized Alliance banking cards to purchase personal items, pay for trips for family and friends, and other items without Alliance's consent, and it is clear that Mrs. Crawford and her children traveled extensively on Alliance's dime for family vacations. *Id.* at 36:21-24, Arbitrator's Award at p. 100, 103.

Based on Mr. Crawford's history of fraud and deceit, Alliance wants to ensure that there is no question that Mr. and Mrs. Crawford's community property can be subject to execution on the nondischargeable portion of Alliance's judgment, and is justifiably concerned that Mr. Crawford will transmute community property to Mrs. Crawford's separate property, which would almost certainly constitute a fraudulent transfer, in order to avoid and/or delay Alliance's execution efforts.  Ensuring that Alliance's claims are exempted from the community discharge is therefore crucial and requires full notice to Mrs. Crawford and the opportunity for her to participate in these matters.

In the Complaint, Alliance has alleged sufficient facts to bind the community and determine that no community property may be discharged. Specifically, as to the community, Alliance alleged that:

> 125. Crawford's actions at all relevant times were intended to benefit the marital community.
>
> 126. Alliance's claims against the Debtors constitute a community property claim such that the marital community is liable on the claims. See *Randono v. Turk*, 466 P.2d 218, 86 Nev. 123, 132 (Nev. 1970) (community property is liable for debts of a spouse "whether arising out of tort or contract").
>
> 127. Pursuant to 11 U.S.C. 524(a)(3), to the extent the Court enters judgment declaring Alliance's claims non-dischargeable, such a judgment shall apply to any discharge of the Debtors' marital community.

1  *See* Compl.

2  These facts, as alleged, are sufficient to bind the community. *Cf. In re Lockhart-Johnson*, 631 B.R. at 42 (finding facts alleged were insufficient to bind community). Furthermore, the simple existence of an innocent spouse cannot shield a bad actor or the community from liability for fraud that he would otherwise be liable. Here, the innocence of Mrs. Crawford has no bearing on the dischargeability of the debt as it relates to the community estate. 11 U.S.C. § 524(a)(3). That is the reason for which Mrs. Crawford is named in this adversary proceeding. Accordingly, judgment on the pleadings is not appropriate absent a finding that Mrs. Crawford's presence is not necessary to exempt Alliance's claims from any community discharge if Alliance prevails in this matter.

**IV.    CONCLUSION**

Based on the foregoing, Torrey Crawford's Motion for Judgment on the Pleadings should be denied absent a finding that any Alliance's claims would be exempted from any community discharge if Alliance prevails on its claims.

DATED: February 23, 2026

FENNEMORE CRAIG, P.C.

By: */s/ Leslie Bryan Hart*
Leslie Bryan Hart
Anthony W. Austin
*Attorneys for Alliance Trust Company*

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW

- 8 -

63273659.2

**CERTIFICATE OF SERVICE**

I certify that on February 23, 2026, a true and correct copy of the **AMENDED RESPONSE TO TORREY CRAWFORD'S MOTION FOR JUDGMENT ON THE PLEADINGS,** was transmitted electronically through the Court's e-filing electronic notice system to the parties associated with this case.

                                                */s/  Debbie Sorensen*
                                      An employee of Fennemore Craig, P.C.